FIRST DIVISION

     September 30, 1998

No. 1-97-1788

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

JIMMY PITTS,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Daniel J. Kelley,

Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Following a jury trial, defendant, Jimmy Pitts, was convicted of aggravated criminal sexual assault, aggravated criminal sexual abuse, and attempted aggravated criminal sexual assault.  The trial court sentenced defendant to a term of natural life for the aggravated criminal sexual assault conviction, 14 years for the aggravated criminal sexual abuse conviction, and 15 years for the attempted aggravated criminal sexual assault conviction, the terms to run consecutively.  On appeal, defendant contends the trial court erred by:  (1) admitting evidence of other sexual crimes committed by defendant; (2) admitting hearsay testimony of statements made by the two minor victims; (3) failing to properly instruct the jury; and (4) improperly sentencing defendant to consecutive terms.  We affirm.

At trial, Brandi
(footnote: 1) testified that in October 1993 she was eight years old and lived with her mother, brother, two sisters, and her mother's boyfriend (defendant).  On October 16, 1993, the defendant and Brandi's mom went to a party, leaving Brandi and her three siblings alone in the house.  The children played for awhile, then Brandi went to bed.   

Around 1 a.m., defendant walked into the bedroom where Brandi was sleeping, picked her up, carried her to her mother's bedroom, and set her down on the bed.  Defendant and Brandi were alone in the room.  

Defendant locked the bedroom door and twice asked Brandi to take off her clothes.  Brandi refused both times.  Defendant put his hand up the left leg of her pajamas and rubbed his hand on her vagina.   Defendant then "put his finger half-way in [her] vagina." Defendant pulled his penis out of his pants and told her to touch it.  He grabbed her hand by the wrist and made her rub his penis.  He told her that he was going to have sex with her when she turned 14.  He also told her that he would kill her if she told anyone what he had done.  Then he carried her back to her bedroom, put her in bed, and walked towards her sisters' (Sonja and Lourina's) bedroom.

Brandi got out of bed and hid behind the refrigerator in the kitchen, in order to see what defendant was going to do next.  Brandi observed her sister, Sonja, get out of bed and walk into the kitchen.  Her other sister, Lourina, was still asleep in the bedroom. Brandi saw defendant close the bedroom door and jam a screwdriver into the lock in order to keep it closed.  Defendant then told Sonja that he wanted her to fill some jugs full of water and take them to the car.  

Sonja went into the bathroom and filled the jugs with water.  Sonja and defendant then walked out the back door; Brandi heard them walk upstairs to the vacant second-floor apartment.  Brandi went back to her bedroom and lay down on the bed.  She heard screaming and thumping coming from upstairs.  She woke up her brother, Ahmad, who shared the bedroom with her, and then they ran upstairs to the second-floor apartment and opened the door.

Brandi saw Sonja lying face-down on the floor.  Defendant was standing "some steps away" from Sonja.  He had a pocket knife in his hand.  When defendant saw Brandi and Ahmad, he ran out the front door.  Brandi, Sonja, and Ahmad ran to their apartment downstairs and locked the door.   Brandi looked out the living room window and saw defendant drive away.  Brandi, Sonja, and Ahmad then ran to a neighbor's house and called their grandmother.  The grandmother told them to come right over, so they went to her house.  Brandi told her grandmother what defendant had done to her, and the grandmother called the police.

Sonja testified that she was 13 years old in October 1993.  On October 16, 1993, the defendant and Sonja's mom went to a party, leaving Sonja and her three siblings home alone.  Sonja watched some television with her brother and sisters, then went to bed at approximately 11 p.m.  

She woke up when she heard defendant come in the front door.  Defendant later walked into her bedroom and asked her to take some water jugs to the vacant apartment upstairs.   She filled the jugs with water, walked upstairs, and set them next to the bathroom door.  She was about to walk out the back door, when defendant came up behind her and locked the door.  

Defendant grabbed her and put a knife to her neck.  Sonja screamed and stomped her feet on the floor.  Defendant told her to shut up, otherwise he would kill her.  Then he dragged her to the living room and laid her face-down on the floor.  Defendant lay on top of her back, then got off and told her to turn over.  As defendant started to unbutton his pants, Brandi and Ahmad pushed open the door and walked inside.  When defendant saw them, he ran out the front door.

Sonja, Brandi, and Ahmad ran downstairs to their apartment and locked the door.  Sonja looked out the window and saw defendant drive away, then the three of them went to a neighbor's house.  The neighbor took Sonja to her grandmother's house, and the grandmother called the police.

Ahmad testified that he was 11 years old in October 1993.  On  October 16, 1993, Ahmad's sister, Brandi, woke him up and told him that she heard somebody upstairs.  Ahmad heard his sister, Sonja, screaming.  Ahmad and Brandi ran to the upstairs apartment, where he saw Sonja lying on the floor.  Defendant was standing over her, with a knife in his hand.  When defendant saw Ahmad and Brandi, he ran out the front door.  Ahmad, Brandi, and Sonja then ran downstairs and waited there until defendant drove away.  Then they ran to a neighbor's house and called their grandmother.  They went to their grandmother's house, and she called the police.

Doris, the children's grandmother, testified she and her husband were asleep in their home on October 17, 1993, when she was awakened by a phone call at approximately 1 or 2 a.m.  Following the conversation, the four grandchildren came to her house.  Doris testified that Brandi told her defendant had touched the outside of her vagina and had inserted his finger inside her vagina.  Doris also testified that Sonja told her defendant had put a knife to her throat, threw her on the floor, took his knee and pressed her legs apart.  

The jury convicted defendant of aggravated criminal sexual assault against Brandi, aggravated criminal sexual abuse against Brandi, and attempted aggravated criminal sexual assault against Sonja.  The trial court sentenced defendant, respectively, to natural life, 14 years' imprisonment, and 15 years' imprisonment, the terms to run consecutively.  Defendant filed this timely appeal.

First, defendant argues the trial court erred by admitting evidence of another sexual crime he committed nine years prior to trial.  Specifically,  Tonya H. testified that in September 1987 she was 13 years old and living with her mother and younger sister in Chicago.  Defendant was her mother's boyfriend at that time, and he often spent the night at their house.   At around 11:30 p.m. on September 12, 1987, Tonya was sitting on her front porch, talking to some friends.  Defendant walked outside and asked Tonya to come inside and follow him into the apartment, so that she could lock the back door behind him when he left.   Tonya followed defendant to the back of the apartment, where there was an enclosed room with a furnace, sink, and a door that led to the outside of the building.  Defendant asked her to unlock the door leading outside, then lock it again when he left.  

Tonya turned her back to defendant and began to unlock the door.  Defendant came up behind her, put his arms around her, and rubbed her breasts.  Tonya fell face-up on the ground, and defendant got on top of her.  Defendant began moving his body in a back and forth motion.  Tonya called out for her mom, and defendant put his hand over her mouth, told her to be quiet, and threatened to kill her if she told her mom what he was doing.

Defendant told Tonya to get up and pull down her pants.  She did as he asked.  Defendant put one hand inside Tonya's vagina, while his other hand rubbed her body.  Defendant then made Tonya lie back down.  He lay on top of her for two or three minutes.  Then he got up and walked out the door.

The trial court admitted Tonya's testimony to show defendant's intent and 
modus
 
operandi
.  Defendant contends the trial court erred in admitting said testimony.

Generally, evidence of other crimes is inadmissible if relevant merely to establish defendant's propensity to commit crime.   
People v. McKibbons
, 96 Ill. 2d 176, 182 (1983).  The law distrusts the inference that because defendant has committed other crimes, he is more likely to have committed the crime charged.  
People v. Bobo
, 278 Ill. App. 3d 130, 132 (1996).  The erroneous admission of evidence of such other crimes is extremely prejudicial and ordinarily calls for reversal.  
Bobo
, 278 Ill. App. 3d at 132. 

However, evidence of other crimes is admissible if relevant for any purpose other than to show defendant's propensity to commit crime, such as motive, intent, or 
modus
 
operandi
.  
Bobo
, 278 Ill. App. 3d at 132.   As we discussed in 
People v. Kimbrough
, 138 Ill. App. 3d 481, 486-87 (1985):

"
Modus
 
operandi
 means, literally, 'method of working.' It refers to a pattern of criminal behavior so distinct that separate crimes or wrongful conduct are recognized as the work of the same person.  [Citation.]  If evidence of other crimes is offered to prove 
modus
 
operandi
, there must be some clear connection between the other crime and the crime charged which creates a logical inference that if defendant committed one of the acts, he may have committed the other act.  This inference of identity does not arise from the mere fact that the crime charged and the other crime share certain common features or marks of similarity, for it may be that these similarities are shared not only by the crime charged and defendant's other crime, but also by numerous distinct crimes committed by persons other than the defendant.  Rather, the inference is created when 
both crimes share peculiar and distinctive common features so as to earmark both crimes as the handiwork of the defendant. [Citation.]" 

Here, the earlier crime against Tonya, and the crimes against Brandi and Sonja, share distinctive common features so as to earmark all the acts as the handiwork of the same person.  Defendant met and gained the trust of all three victims while dating and living with their mothers.  All three victims were minors at the time of the assaults; Tonya and Sonja were 13, and Brandi was eight.  On the night of the assaults, defendant went to the home of each of his victims around midnight.  Defendant tricked Tonya and Sonja into doing a chore (retrieving jugs of water in Sonja's case, locking a door in Tonya's case) so that he could be alone with them.  Defendant carried Brandi to a bedroom so that he could be alone with her.  Defendant forced both Tonya and Sonja to lie on the floor.  He lay on top both Tonya and Sonja.  He inserted his finger into Tonya's vagina, and he inserted his finger into Brandi's vagina; he was interrupted after pushing Sonja to the floor and unbuttoning his pants.  He threatened to kill Tonya, Sonja, and Brandi. 

Given the substantial similarities between defendant's crime against Tonya and his crimes against Brandi and Sonja, the trial court did not abuse its discretion in admitting Tonya's testimony to show defendant's 
modus
 
operandi
.

Defendant argues that there was no issue at trial regarding his identity or intent, and therefore the trial court should not have admitted Sonja's testimony.  We disagree.  Defendant's defense at trial was that he did not commit the charged offenses; he sought to attack the credibility of his accusers.  
Modus
 
operandi
 evidence was relevant to the issue of whether defendant committed the charged crimes.  See 
Kimbrough
, 138 Ill. App. 3d at 487 ("[e]vidence of other crimes may be relevant *** to the issue of who committed a crime [and] to the issue of whether a crime was committed at all"); 
People v. Fuller
, 117 Ill. App. 3d 1026, 1034 (1983)("evidence of *** 
modus
 
operandi
 [is] admissible in prosecutions for sex offenses even where the identity of the accused [is] not in dispute.")

Defendant also cites 
People v. Esterline
, 159 Ill. App. 3d 164 (1987), and 
People v. Woltz
, 228 Ill. App. 3d 670 (1992), in which the appellate court held that any similarities between the crimes charged and prior offenses were outweighed by the differences, such that 
modus
 
operandi
 had not been demonstrated.  In 
Esterline
, the charged crime involved defendant exposing himself to the victim, using lewd language, and touching her thigh over her pants, while the prior offenses involved a variety of dissimilar activity, such as engaging in oral sex with a child and masturbating through the centerfold of a pornographic magazine.  
Esterline
, 159 Ill. App. 3d at 170.  In 
Woltz
, the charged crime involved defendant grabbing the victim while walking along a public road with her, putting his hands down her pants, sticking his fingers "inside" her, fondling her breast, and requesting that she touch his penis.  In the prior offense, the victim was at defendant's home when he grabbed her,  threw her on the floor of his son's room and "raped" her.  
Woltz
, 228 Ill. App. 3d at 676.  The court held that neither the acts nor the circumstances under which they took place showed sufficient similarities to establish 
modus
 
operandi
.   
Woltz
, 228 Ill. App. 3d at 676. 

By contrast, as discussed earlier in this opinion, defendant in the present case engaged in substantially similar behavior with the prior victim, Tonya, and the victims (Brandi and Sonja) of the charged offense.  Further, the circumstances were virtually identical; in each case, defendant sexually attacked the daughter of his girlfriend, in her home, at night.  Thus, 
Esterline
 and 
Woltz
 are inapposite; the trial court here did not abuse its discretion in admitting Tonya's testimony as 
modus
 
operandi
.

Defendant argues that his crime against Tonya, which occurred some six years prior to his crimes against Brandi and Sonja, was too remote to be admissible.  We disagree.  The issue of remoteness goes to the weight of the evidence rather than its admissibility.  
People v. Jendras
, 216 Ill. App. 3d 149, 160 (1991); see also 
People v. McMillan
, 86 Ill. App. 3d 208 (1980)(10-year gap between prior sexual misconduct and offense charged did not preclude admission of evidence).

Defendant argues that the State overstepped its bounds during closing argument when it "encouraged the jury to improperly consider the testimony of [Tonya] as evidence of [defendant's] propensity to commit the charged offense."  Defendant failed to object to all but one of the allegedly improper comments and thereby waived any claim of error with regard to those comments.  
People v. Enoch
, 122 Ill. 2d 176, 186 (1988).  Further, the trial judge sustained the objection to the one complained-of comment, thereby curing any prejudice to defendant.  See 
People v. Childress
, 158 Ill. 2d 275, 298 (1994).

Next, defendant argues the trial court erred by admitting Brandi's and Sonja's hearsay statements to their grandmother, Doris, as excited utterances.  A hearsay statement is admissible as an "excited utterance" if there is (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) an absence of time to fabricate; and (3) a relationship between the statement and the circumstances of the occurrence.  
People v. Meras
, 284 Ill. App. 3d 157, 161-62 (1996); 
People v. Smith
, 152 Ill. 2d 229, 258 (1992).  Each case rests on its own facts and is judged by the totality of the circumstances surrounding the event.  
Meras
, 284 Ill. App. 3d at 162.

In the present case, the totality of the circumstances indicates that Brandi's and Sonja's statements were excited utterances.  Specifically, the incidents of sexual conduct between defendant and the two minor children were sufficiently startling to produce  spontaneous statements.  See 
People v. Hart
, 214 Ill. App. 3d 512, 522 (1991) ("It seems firmly established that an incident of sexual conduct between an adult and a child of 'tender years' is an occurrence sufficiently startling to produce a spontaneous statement").  There was an absence of time to fabricate the statements; after watching defendant drive away, the children immediately ran to a neighbor's house, where they called their grandmother.  They stayed at the neighbor's house for only a few minutes, and then the neighbor drove them to their grandmother's house, which was nearby.  Also, the statements the children made to their grandmother related to the circumstance of the occurrence; specifically, Brandi related how defendant had inserted his finger in her vagina, and Sonja related how defendant had grabbed her from behind and pushed her to the ground.

Defendant argues that Brandi's and Sonja's statements were not spontaneous, because they were made in response to repeated questions from the grandmother.  In support, defendant cites 
People v. Sommerville
, 193 Ill. App. 3d 161 (1990), which held that a victim's statements about a sexual assault were not spontaneous when made in response to a series of questions, including "'What's wrong?'" "'By who?'" "'Are you okay?'" and "'is he there with you now?'" 
Sommerville
, 193 Ill. App. 3d at 174-75.

A review of the record here indicates that the grandmother did not ask repeated questions to Brandi and Sonja; rather, she asked them to tell her "what happened," after which they made their statements.  Our supreme court has held that a statement made in response to the question "what happened?" does not destroy its spontaneity.  
People v. Shum
, 117 Ill. 2d 317, 343 (1987).

Defendant argues that the grandmother's testimony contradicted Sonja's testimony.  Specifically, the grandmother testified that Sonja told her that defendant used his penis or leg to spread her legs apart; Sonja never testified that defendant spread her legs in such a manner.  We find no error.  Any contradiction goes to the weight of the evidence rather than its admissibility.  

Defendant argues that the trial court erred in allowing the grandmother to testify to the details of Brandi's and Sonja's complaints against defendant.  In support, defendant cites 
People v. Evans
, 173 Ill. App. 3d 186 (1988), and 
People v. Hermosillo
, 256 Ill. App. 3d 1020 (1993), which held that under the "prompt complaint" exception to the hearsay rule, only the fact of the complaint, not its details, is admissible.  
Evans
 and 
Hermosillo
 are inapposite to the present case, which involves testimony admitted under the excited utterance exception to the hearsay rule, as opposed to the prompt complaint exception. 

Defendant argues that the trial court erred in failing to first hold a section 115-10(b)(1) (725 ILCS 5/115-10 (West 1996)) hearing prior to admitting Brandi's and Sonja's statements to the grandmother.  Section 115-10 is the codification of a hearsay exception created to admit hearsay statements of children under the age of 13 who have been sexually abused.  
People v. E.Z.
, 262 Ill. App. 3d 29, 34 (1994).  Section 115-10 is inapplicable here, because Brandi's and Sonja's statements were not admitted pursuant to that section but, rather, pursuant to the excited utterance exception to the hearsay rule.  

Defendant argues that section 115-10 is the sole means for admitting hearsay testimony of minors.  We disagree.  Neither the language of the statute nor the case defendant cites in support, 
People v. Mitchell
, 155 Ill. 2d 344 (1993), states that section 115-10 is the sole basis for the admission of such testimony.  In fact, our supreme court has explicitly recognized that hearsay testimony of minors can come in under section 115-10 
or
, as here, under the excited utterance exception to the hearsay rule.   See 
People v. Zwart
, 151 Ill. 2d 37 (1992); see also 
People v. Scott
, 284 Ill. App. 3d 336, 337 (1996).

Next, defendant argues the trial court erred by failing to instruct the jury pursuant to section 115-10(c)(725 ILCS 5/115-10(c)(West 1996)) about the factors to consider when determining the weight and credibility of the children's statements.  We find no error, since, as discussed above, the children's statements were admitted pursuant to the excited utterance exception, 
not
 section 115-10.

Next, defendant argues the trial court erred in giving the following jury instruction pursuant to Illinois Pattern Jury Instructions, Criminal, No. 3.14 (3d ed. 1992)(hereinafter IPI Criminal 3d):

"Evidence has been received that the defendant has been involved in an offense other than those charged in the indictment.

This evidence has been received on the issues of the defendant's intent and 
modus
 
operandi
 and may be considered by you only for that limited purpose.

It is for you to determine whether the defendant was involved in that offense and, if so, what weight should be given to this evidence on the issues of intent and 
modus
 
operandi
."

 Defendant argues that the trial court erred in giving the third paragraph, quoted above; defendant contends said paragraph is nowhere to be found in IPI Criminal 3d No. 3.14.  Defendant is mistaken.  See IPI Criminal 3d No. 3.14[3].  

Finally, defendant argues the trial court erred in imposing consecutive sentences for his aggravated criminal sexual assault of Brandi, his aggravated criminal sexual abuse of Brandi, and his attempted aggravated criminal sexual assault of Sonja.  Defendant waived review of this issue by failing to raise it in his post-sentencing motion.  
People v. Reed
, 177 Ill. 2d 389, 394 (1997).  Even choosing to address the issue on the merits, we find no error.

Under section 5-8-4(a) of the Unified Code of Corrections, the trial court must impose consecutive sentences when a defendant commits multiple offenses as part of a single course of conduct during which no substantial change in the nature of the criminal objective occurred and one of the offenses is a criminal sexual assault or aggravated criminal sexual assault.  730 ILCS 5/5-8-4(a)(West 1996); 
People v. Bole
, 155 Ill. 2d 188 (1993).  

In 
Bole
, our supreme court held that the defendant's three convictions for criminal sexual assault arose from offenses committed on three separate dates, and thus were separate events, not committed in a single course of conduct.  
Bole
, 155 Ill. 2d at 194.  However, the supreme court also noted that given the statutory definition of "conduct" as "an act or a series of acts, and the accompanying mental state" (720 ILCS 5/2-4 (West 1996)), a single course of conduct "could include a range of activity and *** is not necessarily confined to a single incident."  
Bole
, 155 Ill. 2d at 193.

In the present case, the defendant attacked Brandi and Sonja on the same date, in the same apartment building, and within minutes of each other.  The series of acts involving the two children, occurring over a short time period, was a single course of conduct during which the nature of defendant's criminal objective remained the same, 
i.e.
, to sexually assault the daughters of his girlfriend.  Accordingly, the trial court did not err in sentencing defendant to consecutive terms.

For the foregoing reasons, we affirm the trial court.  As part of our judgment, we assess defendant $150 as costs for this appeal.

Affirmed.

GALLAGHER, J., and O. FROSSARD, J., concur.

FOOTNOTES
1:
We omit the children's last names to protect their identity.