**Kelvin SPURLIN, Petitioner–Appellant,**

v.

**Roger D. COWAN, Respondent–Appellee.**

No. 99–3523.

United States Court of Appeals,
Seventh Circuit.

---

Submitted April 30, 2001.*

Decided May 1, 2001.

Before Hon. MICHAEL S. KANNE, Hon. ILANA DIAMOND ROVNER, Hon. ANN CLAIRE WILLIAMS, Circuit Judges.

## ORDER

In 1994 an Illinois jury found Kelvin Spurlin guilty of first degree murder, armed robbery, and kidnapping. He was sentenced to life in prison. He now appeals the district court's denial of his petition for federal habeas corpus relief under 28 U.S.C. § 2254. We affirm.

During the late evening of August 14, 1993, Bertha Gurley was shot and killed in a car while waiting for her boyfriend, Lloyd Foster, to take money out of an

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a).

ATM machine at a Chicago bank. Foster had parked the car near the bank machine, leaving Gurley and their two children in the vehicle while he retrieved money from the machine. As Foster entered the lobby of the bank, he noticed Spurlin waiting in front of the bank. When Foster walked back to his car, he noticed Spurlin following him. Foster gave Gurley the money from the ATM and entered the driver's side of the car. Spurlin, however, put a gun to the window of the car and demanded the money. Gurley handed over the money, but then Spurlin entered the backseat of the car and ordered Foster to drive down the alley in which they were parked. About halfway down the alley, Spurlin ordered Foster to stop the car and exit the vehicle. Foster removed the children from the car, but when Gurley attempted to leave, Spurlin stated, "No, baby you are staying in the car." Gurley objected and again tried to leave the car. At this point, Spurlin pushed her back down and shot her. Spurlin then left the car and ran away.

After police investigated the possible identity of the killer by interviewing security personnel at the ATM's bank, Foster picked out Spurlin's picture from a photo array. The police subsequently arrested Spurlin at his home and conducted a consensual search of the residence, uncovering a holster for a small caliber pistol, a pair of gold-colored pants and a black sport jacket. Police then brought Spurlin to the police station for a lineup, during which Foster identified Spurlin as the perpetrator. Foster also identified the clothes that police brought from Spurlin's home as the same garments worn by the killer.

Foster was the state's primary witness at Spurlin's trial. The state also called to the stand Elizabeth Horton, who testified that in the early morning of August 3,

1993, eleven days before Gurley was murdered, Spurlin had robbed her at gunpoint after she had withdrawn money out of the same ATM. Horton testified that Spurlin announced, "Baby it's a stick up." Mario Scott, who accompanied Horton to the ATM, also testified that Spurlin was the perpetrator of the August 3 armed robbery.

The jury found Spurlin guilty of first degree murder, armed robbery, and kidnapping and he was sentenced to life in prison. He appealed raising only one issue, that the prosecution prejudiced the trial by referring repeatedly to "mug shots" and "mug books," which the Illinois appeals court rejected. Spurlin then filed a state post-conviction petition, which an Illinois circuit court denied as untimely. During his appeal of the denial of his state petition, counsel was appointed to represent him. Nonetheless, counsel moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987), because he believed there were no non-frivolous arguments entitling Spurlin to collateral relief. The state appeals court agreed and granted counsel's motion to withdraw and dismissed the appeal. The appeals court did not address whether Spurlin's state petition was timely, instead focusing on the merits of Spurlin's petition. After the Illinois Supreme Court denied Spurlin leave to appeal, he filed his federal petition for post-conviction relief.

In his federal petition under § 2254, Spurlin raised seven claims: 1) that the trial court denied him due process by allowing evidence of other crimes, specifically the August 3 robbery, to be submitted to the jury; 2) that his arrest violated the Fourth Amendment right to be free from unreasonable searches and seizures; 3) that the trial court unconstitutionally permitted the state to cross examine wit-

nesses beyond the scope of direct examination and the state committed prosecutorial misconduct; 4) that the trial court unconstitutionally permitted the state to ask leading questions of witnesses during direct examination; 5) that the trial court unconstitutionally allowed prejudicial photographs of Gurley's dead body to be sent to the jury during deliberations; 6) that his trial counsel was ineffective for not calling certain witnesses on behalf of the defense; and 7) that his counsel on direct appeal was ineffective for failing to raise the first six issues on direct appeal.

In the order denying Spurlin's petition, the district court appeared to reject claims one through five as procedurally defaulted, explaining that the state appeals court had deemed these claims waived due to Spurlin's failure to raise them in his direct appeal. The court concluded, however, that the state appeals court had not addressed the merits of Spurlin's alleged cause for the procedural default—that his appellate counsel was constitutionally ineffective for failing to argue these five issues in his direct appeal. Having determined that the state appellate court did not address the merits of the ineffective-assistance-of-appellate-counsel claim, the district court proceeded to analyze whether Spurlin was prejudiced by his appellate attorney's failure to argue claims one through five. The district court concluded that the waived issues lacked merit, and so Spurlin was not prejudiced by his attorney's failure to raise them on direct appeal. As for issue six, trial counsel's alleged ineffectiveness for failing to call certain witnesses, the district court concluded that Spurlin failed to demonstrate that the state court's decision on this matter was an unreasonable application of or contrary to federal law as decided by the United States Supreme Court. Spurlin asked the district court for a certificate of appealability, which the district court granted in part solely on the issues whether the trial court erred by allowing testimony regarding other crimes and of whether trial counsel was ineffective for not calling certain witnesses to testify at trial. Spurlin appeals.

As a preliminary matter, we note that the district court framed the first issue granted in the certificate of appealability as whether the trial judge erroneously admitted "other crimes evidence ." Significantly, the district court's certification did not characterize Spurlin's other-crimes claim as one brought under an "ineffective assistance of appellate counsel" rubric. In its earlier order denying Spurlin's federal petition, the court had recast the other-crimes claim as one of ineffective assistance of appellate counsel for failing to raise the claim on direct appeal. The court apparently recast the claim in this manner to avoid a procedural bar that applies to claims not raised on direct appeal, such as Spurlin's claim that the state trial court improperly allowed the state to introduce evidence of his other crimes. From the district court's minute order, however, we cannot discern whether the court intended to certify the ineffective-assistance-of-appellate-counsel claim on the other-crimes issue, or merely the other-crimes claim itself. Nevertheless, Spurlin briefed the ineffective-assistance-of-appellate-counsel claim and thus is asking us, albeit implicitly, to expand his certificate of appealability to include a claim that appellate counsel was ineffective for failing to raise his other-crimes argument on direct appeal. *See Ouska v. Cahill–Masching*, 246 F.3d 1036, 1045 (7th Cir. 2001) (noting that this court considers implicit requests to amend a certificate of appealability when a party briefs issues not specified in the certificate). Accordingly, we will evaluate whether the certifi-

cate should be expanded in this manner.[1]

Before we will amend his certificate of appealability, Spurlin must show that reasonable jurists could debate whether his ineffectiveness-of-appellate-counsel claim should have been resolved differently or that his claim should have been allowed to proceed on appeal. *Id.* at 1053. We agree with the district court that the state appeals court's cursory mention of Spurlin's ineffectiveness-of-appellate-counsel argument demonstrates that the appeals court did not examine the merits of the claim and, therefore, we will not exercise our usual post-AEDPA deference to the state court rejection of it. *See id.; Liegakos v. Cooke,* 106 F.3d 1381, 1385 (7th Cir.1997).

█ But even under de novo review, we cannot say that the failure of Spurlin's appellate attorney to challenge the inclusion of other-crimes testimony prejudiced the outcome of the appeal. To demonstrate ineffectiveness of counsel, Spurlin must show that his attorney's performance was inadequate and that he was prejudiced by the inadequate performance. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Ouska,* 246 F.3d at 1053. Prejudice, in the ineffectiveness assistance of counsel context, means a "reasonable probability that, but for that error, the result of the proceeding would have been different." *Id.* at 1053 (citing *Strickland* ).

█ Spurlin believes that he was prejudiced by his appellate attorney's failure to raise the other-crimes issue because admission of evidence regarding the August 3 robbery tended to show that he had a propensity to commit robbery. He contends that the testimony about the August 3 robbery should have been excluded because there were too many dissimilarities between that robbery and the robbery of Gurley. Under Illinois law, so long as other crimes evidence is not admitted to show propensity to commit crime, it may be introduced to show *"modus operandi,* intent, identity, motive, or absence of mistake." *People v. Luczak,* 306 Ill.App.3d 319, 239 Ill.Dec. 698, 714 N.E.2d 995, 999 (Ill.App.Ct.), *leave to appeal denied,* 185 Ill.2d 650, 242 Ill.Dec. 146, 720 N.E.2d 1101 (Ill.1999), *cert. denied, Luczak v. Illinois,* 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000). Furthermore, the question whether to admit testimony of another crime "is within the sound discretion of the trial court." *People v. King,* 293 Ill.App.3d 739, 228 Ill.Dec. 127, 688 N.E.2d 825, 829 (Ill.App.Ct.1997). The state is allowed to introduce relevant evidence of other crimes once they have met a "threshold of similarity." *Luczak,* 239 Ill.Dec. 698, 714 N.E.2d at 999. When other crimes evidence is used to demonstrate identity, similarities in "time, location, and manner of performance" are relevant. *People v. Johnson,* 255 Ill.App.3d 547, 193 Ill.Dec. 522, 626 N.E.2d 1073, 1085 (Ill.App.Ct.1993). The robberies that occurred on August 3 and August 14 presented compelling similarities: the robberies took place at the same bank, with a gun, and late at night/early in the morning. Although Sprulin points out that the perpetrators in the robberies were dressed differently, that one robbery took place before midnight and the other after mid-

---

1. In addition to briefing the ineffective assistance of appellate counsel claim, Spurlin addressed the other four claims that the district court denied in the certificate of appealability. We also construe the inclusion of these claims in his brief as a request to expand the certificate of appealability. With respect to these claims that Spurlin wishes to add, we have reviewed the final order of the district court and the record on appeal. We find no substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and therefore deny Spurlin's motion to expand the certificate of appealability.

night, and that the perpetrator on August 14 entered the victim's car, we believe that these dissimilarities are insubstantial. Based on the similarities between the August 3 robbery and the August 14 robbery, the trial court acted within its discretion by admitting the other crimes testimony as a means to demonstrate the identity of the perpetrator and thus Spurlin was not prejudiced by his attorney's failure to raise this issue before the state appeals court.

Spurlin also contends that his trial counsel was ineffective for inadequately investigating and failing to call as witnesses members of Gurley's family, who he believes would have discredited the testimony of Lloyd Foster, the state's primary witness, and shown that Foster himself could have murdered Gurley. Further, he argues that his counsel should have called the bank's security officer who identified Spurlin to the police prior to Spurlin's arrest because the officer would supposedly admit that he did not know whether Spurlin committed the August 14 robbery.

■ During the appeal of his post-conviction petition, the Illinois appellate court rejected this claim on the merits, and we cannot say that the Illinois appeals court's adjudication of trial counsel's alleged ineffectiveness "resulted in a decision that was contrary to, or involved an unreasonable application of" the facts or clearly established federal law. 28 U.S.C. § 2254(d). First, the appeals court utilized the correct test to assess the ineffectiveness claim: whether counsel's performance was deficient and whether that deficiency was prejudicial. *People v. Burgess*, 176 Ill.2d 289, 223 Ill.Dec. 624, 680 N.E.2d 357, 367 (Ill. 1997) (citing *Strickland*, 466 U.S. at 687). In applying this standard, the state court concluded that Spurlin's trial attorney's actions regarding witnesses "were based on reasonable trial strategy" and that Spurlin had "not demonstrated prejudice." Spur-

lin here has not established that this conclusion was contrary to or an unreasonable application of federal law, *see* § 2254, because Spurlin has made no affirmative demonstration of the content of the potential witnesses' testimony. An affirmative demonstration means that he provide "a detailed and specific affidavit which shows that the petitioner ha[s] actual proof of the allegations going beyond mere unsupported assertions," *Prewitt v. United States*, 83 F.3d 812, 819 (7th Cir.1996). In Spurlin's affidavit, which he attached to his petition as Exhibit 1, he merely expresses his belief of what the bank security officer would say, and does not identify what sort of testimony Gurley's family members would provide. This speculative affidavit does not come close to satisfying the requirement that he provide "actual proof of the allegations going beyond mere unsupported assertions." *Id.*

In his reply brief, however, Spurlin argues that he did provide the district court with an affidavit from Gurley's grandmother, Irene Chistder, outlining what she would have said if she had been called at trial. But Spurlin admits that he did not present this affidavit to the district court until he moved the court to supplement the record on appeal. The district court denied the motion on the grounds that Spurlin had never presented to the court any of the documents he wished to add. Generally, evidence that was not presented to the district court "is not part of the appellate record" and "has no place in an appellate brief." *McClendon v. Indiana Sugars Inc.*, 108 F.3d 789, 795 (7th Cir.1997).

But even if we were to review Chistder's affidavit as part of the record on appeal, we do not believe that it demonstrates that the alleged failure of Spurlin's trial attorney to call Chistder as a witness caused prejudice. Chistder attests that around the time of the murder, Gurley told her

that Foster wanted to take Gurley's children away from her, but that Gurley would not let him. Furthermore, Chistder states that on an unspecified date, Foster hit Gurley with a gun. That Foster and Gurley were having relationship problems and that Foster once hit Gurley does not call into question the strong identification evidence that Spurlin was the murderer. Nor does it implicate a reasonable probability that, but for the exclusion, the result of the trial would have changed, *see Ouska*, 246 F.3d at 1053.

Accordingly, we AFFIRM the decision of the district court and DENY Spurlin's implicit request to expand the scope of his certificate of appealability.