No.  2--01--0248

     

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of Du Page County.

) 

Plaintiff-Appellee, ) 

)

) No. 99--CM--2296

)

VENKATESAN DEENADAYALU, ) Honorable

) Joseph S. Bongiorno,

Defendant-Appellant. ) Judge, Presiding.

JUSTICE GEIGER delivered the opinion of the court:

Following a bench trial, the defendant, Venkatesan Deenadayalu, was convicted of criminal sexual abuse (720 ILCS 5/12--15(a)(2) (West 1998)) and battery (720 ILCS 5/12--3(a)(2) (West 1998)) and sentenced to 24 months' sex-offender probation and 10 days in the Sheriff's Work Alternative Program.  On appeal, the defendant argues that (1) the trial court erred in admitting other-crimes evidence; and (2) he was not proved guilty beyond a reasonable doubt of the offense of criminal sexual abuse.  We affirm.

On June 25, 1999, the defendant was charged by complaint with the misdemeanor offense of criminal sexual abuse.  720 ILCS 5/12--15(a)(1) (West 1998).  The complaint alleged that, on October 6, 1998, the defendant rubbed his genitals against the leg of the victim, S.C., for the purpose of his sexual arousal.  On January 25, 2000, the defendant was charged by information with the additional offense of battery.  This charge alleged that on October 6, 1998, the defendant committed a battery against the victim when he kissed her.

The following evidence was introduced at trial.  The victim testified that, on October 6, 1998, she experienced a severe headache and a sore neck and went to the Emergency Medical Clinic (Clinic) in Downers Grove.  The defendant was a physician on duty at the Clinic and conducted an examination of the victim.  The victim testified that, after going into an examination room, the defendant appeared and attempted to lock the door.  The victim testified that no one else was in the room besides the defendant and her.

The victim explained her symptoms to the defendant.  The victim testified that the defendant then put his hand up her shirt from behind and rubbed her neck in the area where she was experiencing pain.  The defendant then moved his hand down her back, placed his hand in the waistband of her sweatpants, and felt the crack of her buttocks.  The victim testified that this conduct occurred over a period of 30 seconds.

The victim testified that the defendant then pressed his body against her knee for about five seconds.  The victim felt something "hard" against her body, which she believed to be an erection.  The victim thought that the defendant had an erection because she saw a "protrusion" from his pants area.  The defendant then attempted to pry open the victim's legs.  The defendant leaned into the victim and "smelled all the way up [her] head."  The defendant then placed his hands under the victim's shirt.  The victim testified that the defendant was unable to touch her breasts because she kept her arms down.  The defendant then tilted the victim's chin up and kissed her.  The defendant told the victim that she appeared "sweaty."  The defendant then left the examining room and returned with a prescription form and nose spray.  The defendant still exhibited an erection when he returned to the room.

The victim testified that the defendant's conduct amazed and shocked her and that she did not say anything to the defendant during the incident.  Following the examination, the victim went to the front desk and paid the fee without voicing a complaint.  The victim left the Clinic accompanied by her boyfriend, Jerry Kupsche.  After she told Kupsche about the defendant's conduct, Kupsche took her to Edwards Hospital in Naperville.  The victim reported the incident to the police the following day.

Officer James Stark of the Downers Grove police department testified that he took the report of the victim's complaint.  After receiving the complaint, Officer Stark went to the Clinic and interviewed the defendant.  The defendant denied touching the victim in an unprofessional manner.  The defendant told Officer Stark that there was normally a female assistant in the room during an examination of a female patient but that no assistant was present during the victim's examination because the office was short-handed.

Over objection, the State introduced the testimony of K.B. and L.H. regarding other acts of sexual misconduct committed by the defendant.  K.B. testified that she filed a complaint against the defendant with the Downers Grove police department after the defendant performed an examination upon her at the Clinic on March 11, 1999.  On this occasion, the defendant entered the examining room and locked the door.  No one else was in the room besides K.B. and the defendant.  K.B. explained her symptoms to the defendant, which included abdominal and back pain.  The defendant instructed K.B. to pull her pants down.  Without wearing gloves, the defendant touched K.B.'s clitoris with his finger and stroked it up and down for less than a minute.  The defendant did not penetrate K.B.'s vagina with his finger.  The defendant then left the room and K.B. pulled up her pants.  When the defendant returned to the room, he winked at K.B.

L.H. testified that she first went to the Clinic in September  or October 1998 because she was experiencing migraine headaches.  After the defendant examined her on this occasion, he prescribed her Vicodin.  L.H. continued to experience migraine headaches and was again examined by the defendant in July 1999.  The defendant closed the door and asked L.H. if she had any pain in her genital area.  The defendant initially examined L.H.'s stomach area and then moved his hands over her clothed vaginal area for about 15 seconds.  During another examination in August 1999, the defendant moved his hands over L.H.'s vaginal area for about 30 seconds.

In September or October 1999, L.H. consulted the defendant about a yeast infection.  The defendant examined L.H.'s vagina with his fingers for approximately one to two minutes.  When L.H. lifted her head to complain of pain, she noticed the defendant's groin area pressed against the examination table.  L.H. could not tell whether the defendant had an erection, but she believed that he was aroused based upon his facial expression.

In February 2000, L.H. was again examined by the defendant because she was suffering from ringworm.  When the defendant entered the examining room, he locked the door.  The defendant placed his hands under L.H.'s gown and touched her breasts.  The defendant then put his mouth near L.H.'s vagina for about 30 seconds, unzipped his pants, and exposed his penis.  L.H. told the defendant "that would never happen," and the defendant then zipped his pants back up.  On each of these examinations, the defendant and L.H. were alone in the examining room.  On April 17, 2000, L.H. contacted the Downers Grove police department to report the defendant's conduct.  L.H. testified that she continued to see the defendant over this period of time because she was addicted to Vicodin.

The defendant called three witnesses during his case in chief. Minella Aleksi, a medical assistant at the Clinic, testified that he worked the same shift as the defendant.  Aleksi maintained that he had never seen the defendant lock the door to an examination room when a patient was in the room.  According to Aleksi, the Clinic had policies requiring that (1) all examination doors remain unlocked; (2) patients wear gowns during an examination; and (3) a female assistant be present during all gynecological examinations.

Donna Jelinek testified that she was the office manager at the defendant's medical office in Bloomingdale.  Jelinek testified that L.H. had come to the office on January 25, 2000, complaining of itching.  Jelinek was present when the defendant examined L.H. on this occasion and did not observe the defendant touch her in any improper manner.

The defendant also testified on his own behalf.  The defendant acknowledged that he examined the victim on October 6, 1998.  The defendant testified that nobody else was present during the examination of the victim and that he did not lock the door during the victim's examination.  The defendant explained that, because his left leg is shorter than his right, he leans when he stands.  The defendant always kept his wallet in his right pocket and testified that his wallet might have made contact with the victim's body during the examination.  The defendant denied touching the victim's lips, smelling her hair, rubbing her back, putting his hand under her shirt, attempting to open her legs, or having any sexual contact with her.  The defendant also denied that he had an erection during the examination.  The defendant testified that he asked the victim if she was sweaty in order to determine whether she was having any side effects to the nasal spray he had given her. 

The defendant also testified concerning the other-crimes evidence introduced by the State.  As to K.B., the defendant testified that there was no medical assistant in the room because he was not performing a vaginal exam.  The defendant testified that K.B. complained of abdominal pain, and he examined her abdominal area by palpating with his three middle fingers.  The defendant denied touching K.B.'s vaginal area.

As to L.H., the defendant acknowledged that he became her treating physician in October 1998.  The defendant denied that he ever touched L.H.'s vaginal area during his treatment.  The defendant testified that he did treat L.H. for ringworm and a yeast infection, but that he did not perform a vaginal exam during these visits.

At the close of evidence, the trial court found the defendant guilty of both charges.  The trial court found the victim's testimony and the testimony of both K.B. and L.H. to be persuasive.  The trial court also found that the testimony of Aleksi and Jelinek was not credible.  The trial court subsequently sentenced the defendant to 24 months' sex-offender probation and 10 days in the Sheriff's Work Alternative Program.  The defendant subsequently filed a timely notice of appeal.

The defendant's first argument on appeal is that the trial court erred in permitting the State to introduce evidence that he committed other crimes against K.B. and L.H.  The defendant argues that the evidence was highly prejudicial and was not probative to establish his criminal intent in the instant case.

Evidence of the commission of other crimes is not admissible for the purposes of showing a defendant's disposition or propensity to commit crime.  
People v. Illgen
, 145 Ill. 2d 353, 364 (1991).  However, evidence of the commission of other crimes is admissible where it is relevant to prove 
modus
 
operandi
, intent, identity, motive, or absence of mistake.  
Illgen
, 145 Ill. 2d at 364-65.  The trial court must weigh the relevance of the evidence to establish the purpose for which it is offered against the potential prejudice.  
People v. Thingvold
, 145 Ill. 2d 441, 452 (1991).  When evidence of another crime is offered, there must be some similarity between the other crime and the crime charged to ensure that it is not being used to establish criminal propensity.  
People v. Johnson
, 239 Ill. App. 3d 1064, 1074 (1992).  The trial court's ruling as to the admissibility of such evidence will not be reversed absent a clear abuse of discretion.  
Thingvold
, 145 Ill. 2d at 452-53.

Illinois courts have held that other-crimes evidence is relevant in a sexual assault prosecution to prove the defendant's intent or lack of an innocent frame of mind.  See 
People v. Luczak
, 306 Ill. App. 3d 319, 325-26 (1999); 
People v. Harris
, 297 Ill. App. 3d 1073, 1086-87 (1998); 
Johnson
, 239 Ill. App. 3d at 1074-76.  For example, in 
Johnson
, the court held that it was permissible to admit evidence that a defendant had committed a prior sexual assault to show the lack of innocent intent in the sexual assault for which he was on trial.  
Johnson
, 239 Ill. App. 3d at 1075.  The court noted that there were numerous similarities between the other conduct and the charged offense, including that both victims were abducted in the same manner and both victims were beaten, choked, and bitten.  
Johnson
, 239 Ill. App. 3d at 1075.

Similarly, in 
People v. Harris
, 297 Ill. App. 3d 1073, 1086 (1998), the court found that evidence of a prior sexual assault was admissible to establish the defendant's lack of innocent intent in the sexual assault for which he was on trial.  Once again, the court noted the similarities between the two crimes--the victims were abducted in the same area, driven to a similar location, assaulted, and returned to locations near to where they lived and to where they had been taken.  
Harris
, 297 Ill. App. 3d at 1086.

Most recently, in 
People v. Luczak
, 306 Ill. App. 3d 319, 325-26 (1999), the court also permitted evidence that the defendant had committed a prior sexual assault six years earlier.  In 
Luczak
, the defendant testified that no sexual conduct had occurred between him and the victim, although he admitted to giving the victim a ride.  
Luczak
, 306 Ill. App. 3d at 325.  Such testimony conflicted with the testimony of the victim, who stated that the defendant drove her to the southeast side of Chicago, threatened her, and eventually attacked her.  
Luczak
, 306 Ill. App. 3d at 320-21.  After noting similarities between the prior conduct and the conduct that the defendant was now being charged with, the court held that the evidence of the prior conduct was relevant to the issue of the defendant's intent at the time he was with the victim.  
Luczak
, 306 Ill. App. 3d at 325-26.

In the present case, the trial court found that the evidence of the defendant's other acts of sexual misconduct was relevant to establish intent and the absence of mistake.  On the basis of the principles outlined above, we cannot say that such a determination constituted an abuse of discretion.  There were many similarities between the defendant's conduct in the other cases and his conduct in the present case.  In all of the cases, the defendant used his position as a physician in order to commit the acts of sexual misconduct.  The defendant always examined the victims alone and attempted to lock the examining room door.  The defendant did so despite the existence of  Clinic policies requiring otherwise.  Following the defendant's initial medical inquiries, he would eventually touch the women in areas unrelated to the reported ailment.  This conduct would eventually lead to nonconsensual sexual contact.  Although the specific sexual acts committed by the defendant varied from case to case, his conduct in isolating the victims and relying on his position as a physician was always the same in each instance.

Additionally, as in 
Luczak
, the other-crimes evidence in this case was particularly relevant because the defendant denied that any sexual conduct occurred between him and the victim.  The defendant testified that the victim mistook the nature and the location of his touching during the examination.  The defendant also asserted that the victim mistook the wallet in his pocket for an erection.  In light of the conflicting testimony between the victim and the defendant, intent and the absence of mistake were crucial issues for the trial court to decide.  See 
Luczak
, 306 Ill. App. 3d at 325.  Therefore, we agree with the trial court that evidence of the defendant's other crimes was relevant.

The defendant relies on 
People v. Rogers
, 324 Ill. 224, 233 (1926), for the proposition that, in sexual assault cases, the use of other crimes to show intent, knowledge, accident, or mistake is improper because these factors are shown by testimony concerning the act itself.  In 
Rogers
, the Illinois Supreme Court held that, in a case where the defendant was charged with taking indecent liberties with a child, the State could not introduce evidence that the defendant had sexually assaulted 12 other girls.  
Rogers
, 324 Ill. at 233.  However, this rule has been applied only in cases where the defendant is alleged to have committed acts of sexual misconduct with children.  See 
People v. Woltz
, 228 Ill. App. 3d 670, 674 (1992); 
People v. Daniels
, 172 Ill. App. 3d 616, 624-25 (1988).  In the present case, all of the defendant's alleged sexual misconduct was committed against adults.  Therefore, under the reasoning of 
Johnson
, 
Harris
, and 
Luczak
, we conclude that the State could properly introduce evidence of other similar crimes of sexual misconduct to prove intent, knowledge, and the lack of mistake.  Accordingly, we do not believe that the trial court abused its discretion in allowing the other-crimes evidence for this limited purpose.

The defendant also argues that the admission of this evidence was improper because it was used to enhance the credibility of the victim and resulted in a mini-trial of the collateral offenses.  The defendant complains that K.B. and L.H. gave detailed testimony and that the State called a police officer to testify about his investigation of one of the collateral offenses.  However, in this case, the trial judge rather than the jury sat as the finder of fact.  In a bench trial, it is presumed that the trial court will consider only properly admitted evidence.  
People v. Eddmonds
, 101 Ill. 2d 44, 65-66 (1984).  Likewise, when other-crimes evidence is introduced for a limited purpose, it is presumed that the trial judge considered it only for that purpose. 
 
People v. Avery
, 227 Ill. App. 3d 382, 389 (1991).  Here, throughout the course of the proceedings, the judge repeatedly reiterated that the other-crimes evidence would be admitted only to establish intent and the absence of mistake.  During its ruling, the trial court again repeated that it had considered the other-crimes evidence only for this limited purpose.  Accordingly, we do not believe that the defendant was deprived of a fair trial or that the finding of guilt was improperly based on his other acts of sexual misconduct.

As his final argument on appeal, the defendant argues that the State did not prove him guilty beyond a reasonable doubt of the offense of criminal sexual abuse.  As noted earlier, the charge of criminal sexual abuse alleged that the defendant rubbed his genitals against the leg of the victim.  Specifically, the defendant argues that the State did not prove that the victim in this case was unable to consent to the sexual conduct.  720 ILCS 5/12--15(a)(2) (West 1998).

When considering a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant.  
People v. Collins
, 106 Ill. 2d 237, 261 (1985).  The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Collins
, 106 Ill. 2d at 261.  The determinations of the witnesses' credibility, the weight to be given to their testimony, and the reasonable inferences to be drawn from the evidence are the responsibilities of the fact finder.  
Collins
, 106 Ill. 2d at 261-62.  A conviction may be upheld based on the positive and credible testimony of a single witness, even if this testimony is contradicted by the defendant.  
People v. Garza
, 298 Ill. App. 3d 452, 458 (1998).

In order to prove the defendant guilty of criminal sexual abuse, the State was obligated to prove that the defendant committed "an act of sexual conduct and the accused knew that the victim was unable to understand the nature of the act or was unable to give knowing consent."  720 ILCS 5/12--15(a)(2) (West 1998).  For purposes of his argument, the defendant does not dispute that sexual conduct occurred between himself and the victim.  Instead, the defendant asserts that the victim was under an obligation to tell him to stop the offensive touching if she did not wish him to continue.  The defendant argues that, because the victim was complaining of a headache, she should have been on notice that something was amiss when she felt the defendant's hands progressing down her back and touching her buttocks.  The defendant asserts that the victim was in a position to refuse consent at this time and that she did not.

In 
People v. Borak
, 13 Ill. App. 3d 815 (1973), this court considered the question of a patient's ability to consent to unexpected sexual conduct committed by her physician during a gynecological examination.  In that case, the physician asked the patient extremely personal questions, such as her ability to achieve orgasm, while manipulating his finger in the patient's vagina.  
Borak
, 13 Ill. App. 3d at 817.  The physician was also breathing heavily and appeared flush.  The patient testified that she was scared and believed that the physician was sexually aroused.  The patient did not ask the physician to let her go at this time and instead followed his instructions to close her eyes.  The patient then felt the physician's tongue against her vagina.  The patient then got up on her elbows, but lay back down and closed her eyes after the physician instructed her to do so.  About 30 seconds later, the patient felt the physician's penis enter her vagina, at which time she sat up quickly and got dressed.  The physician was subsequently convicted of deviate sexual assault and rape.  
Borak
, 13 Ill. App. 3d at 816-17.

On appeal, the physician argued that the State had not proved that the acts of sexual conduct were performed against the patient's will.  
Borak
, 13 Ill. App. 3d at 818.  This court held that a patient is incapable of consenting when a physician commits deviate sexual acts under the pretext of medical treatment in instances when the victim is surprised and unaware of the defendant's intention.  
Borak
, 13 Ill. App. 3d at 820-21.  We then explained:

"[E]ven if the [patient] realized that [the physician's] questions were improper, this would not in itself indicate what was to follow.  While [the physician's] appearance indicated to [the patient] that he was sexually aroused, he had not performed any actions which she knew to be improper, and [the patient] was not put on notice that [the physician] would perform an overt, deviate act upon her body.  [The physician's] act of deviate sexual conduct was, *** 'through surprise', with [the patient] being 'utterly unaware of his intention in that regard.'  [The patient] was therefore incapable of consenting to the act, and 'statutory' force was present.

However, the contrary is true as to the act of intercourse.  When [the physician] put his mouth on [the patient's] organ, she became aware of his intentions, and nothing he did thereafter could come as a surprise.  ***  Yet she failed to object and followed [the physician's] instruction to lay back down and close her eyes.  ***  Her failure to resist when it was within her power to do so amounts to consent, and removes from the act an essential element of the crime of rape."  
Borak
, 13 Ill. App. 3d at 821.

This court therefore affirmed the physician's conviction for deviate sexual assault based on the physician's act of placing his mouth on the patient's vagina, but it reversed his conviction for rape based on the act of sexual intercourse.  
Borak
, 13 Ill. App. 3d at 822.

In the present case, the defendant's conduct was less overt than the physician's conduct in 
Borak
.  As in 
Borak
, there was nothing in this case to suggest that the victim should have questioned the nature of the defendant's initial behavior or suspect that sexual conduct was to follow.  It would not be unreasonable for a patient complaining of severe head and neck pain to believe that a doctor would check to see if the patient was exhibiting signs of muscle tension down her back.  Although perhaps the victim might have started to question the defendant's conduct when he touched her buttocks, we do not believe that a patient would necessarily be put on notice that an assault was about to occur.  Therefore, as in 
Borak
, we do not believe that the victim in this case was put on notice of the defendant's intentions until he committed the charged act of sexual conduct, which was pressing his genitals against the victim's leg.  Indeed, the victim testified that she was completely amazed and shocked by the defendant's actions.  Accordingly, we conclude that the evidence supported the trial court's finding that the victim was unable to consent to the defendant's conduct.

In closing, we acknowledge that the testimony presented in this case was conflicting.  However, the victim's testimony was heard by the trial judge along with all of the other evidence.  After having the opportunity to observe the demeanor of the witnesses, the trial judge found the testimony of the victim and the State's other witnesses to be credible and persuasive.  Based upon the record before us, we cannot say that such a determination was unreasonable, and we decline the defendant's invitation to reweigh the testimony.  Accordingly, we conclude that the defendant was proved guilty of the offense of criminal sexual abuse.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

O'MALLEY and CALLUM, JJ., concur.