2020 IL App (2d) 181048
No. 2-18-1048
Opinion filed December 14, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-CF-1632 |
| JERMAINE BAKER, | ) ) ) | Honorable David P. Kliment, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices Hutchinson and Schostok concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Jermaine Baker, appeals his convictions of home invasion (720 ILCS 5/19-6(a)(5) (West 2014)), attempted first-degree murder (*id.* §§ 8-4(a), (c)(1)(D)), and aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)). He contends that the trial court erred in denying his motion to suppress his unrecorded statements to police, because the police did not comply with the recording requirements of section 103-2.1(b-5) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-2.1(b-5) (West 2014)). Defendant contends that section 103-2.1(b-5) facially violated his right to equal protection because, while the statute was enacted before he was interrogated, the legislature delayed implementation of it to the offense of home invasion until after the date of his interrogation. We affirm.

¶ 2                                I. BACKGROUND

¶ 3     On September 8, 2014, defendant was arrested and interrogated regarding an incident involving a home invasion and shooting. During the interrogation, defendant made unrecorded incriminating statements. At the hearing on defendant's motion to suppress, Aurora Police Department Detective Kevin Jenkins testified that he was one of the officers who interrogated defendant. According to Jenkins, recording equipment was available in the interview room. Defendant made his incriminating statements during an unrecorded initial interview. Jenkins then proceeded to the "actual interview," where he would have asked defendant to "recap[ ]" his remarks and for permission to record the interview. However, defendant's counsel ended the interview before Jenkins could ask to record it.

¶ 4     At trial, Aurora Police Department Lieutenant Matthew Thomas testified that he did not record defendant's statements because recording was not mandatory and suspects were often hesitant to talk if recorded immediately. At the time of the interrogation, section 103-2.1 had been amended by Public Act 98-547, § 10 (eff. Jan. 1, 2014), to add section 103-2.1(b-5), which provided that a defendant's unrecorded statements made during interrogation in connection with various felonies, including home invasion, were presumptively inadmissible. However, due to a multi-year rollout period, its application to home invasion did not become effective until June 1, 2015. 725 ILCS 5/103-2.1(b-5)(2) (West 2014).

¶ 5     Defendant moved to suppress his statements, arguing that he was improperly interrogated after invoking his right to counsel and that the police failed to record the interrogation under section 103-2.1(b-5)(1) pertaining to the offense of attempted first-degree murder. He did not raise an equal protection claim based on the statute's effective date as it applied to home invasion. After a hearing, the court found that defendant's testimony that he invoked his right to counsel lacked

credibility. The court later found that section 103-2.1(b-5)(1) did not apply to attempted first-degree murder. Defendant was convicted at a jury trial and sentenced to 48 years' incarceration. His motion for a new trial was denied, and he appeals.

¶ 6                                    II. ANALYSIS

¶ 7      Defendant contends that the delay in the effective date of section 103-2.1(b-5)(2) as applied to the offense of home invasion violated his right to equal protection. He argues that there is no rational basis for the statute to have different effective dates for different similarly serious offenses. Although the State characterizes defendant's argument as an as-applied constitutional challenge, in his reply brief defendant specifically states that he is instead raising a facial constitutional challenge relying solely on the legislative history of section 103-2.1(b-5) and not on the specific facts of his case.

¶ 8      The State contends that defendant forfeited his argument because he did not raise the issue in the trial court. Defendant, however, argues that, because he is challenging the facial constitutionality of section 103-2.1(b-5), he may raise the issue for the first time on appeal. A facial constitutional challenge to a statute may be raised at any time. *People v. Thompson*, 2015 IL 118151, ¶ 32. Thus, defendant has not forfeited the issue.

¶ 9      "Statutes are presumed constitutional, and the party challenging a statute has the burden of establishing a clear constitutional violation." *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20. A reviewing court "will affirm a statute's constitutionality if the statute is reasonably capable of such an interpretation." *People v. Johnson*, 225 Ill. 2d 573, 584 (2007). "[W]e will resolve any doubt on the construction of a statute in favor of its validity." *People v. Boeckmann*, 238 Ill. 2d 1, 6-7 (2010). "Moreover, a challenge to the facial validity of a statute is the most difficult challenge to mount successfully because an enactment is invalid on its face only if no set of circumstances

exists under which it would be valid." *One 1998 GMC*, 2011 IL 110236, ¶ 20. "[T]he specific facts related to the challenging party are irrelevant." *Thompson*, 2015 IL 118151, ¶ 36.

¶ 10 " 'In conducting an equal protection analysis, we apply the same standards under both the United States Constitution and the Illinois Constitution.' " *People v. Dean*, 363 Ill. App. 3d 454, 463 (2006) (quoting *Wauconda Fire Protection District v. Stonewall Orchards, LLP*, 214 Ill. 2d 417, 434 (2005)). "The constitutional guarantee of equal protection requires that similarly situated individuals be treated similarly." *Dean*, 363 Ill. App. 3d at 463. However, the drawing of a distinction among different categories of people in a statute is not forbidden, so long as the distinction that is made is proper. *Id.* at 463-64. When a statutory distinction has been drawn that does not affect a fundamental right or involve a suspect class, a rational-basis test must be satisfied. *Id.* at 464. Here, defendant concedes that the distinction involves neither a fundamental right or suspect class and that the rational-basis test applies.

¶ 11 Under the rational-basis test, there must be a rational basis for distinguishing the class to which the statute applies from the class to which it is inapplicable. *Id.* "[J]udicial review of legislative classifications is limited and generally deferential; the court simply inquires whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal." (Internal quotation marks omitted.) *Id.* " 'The classification must be upheld if any set of facts can reasonably be conceived to justify it.' " *Id.* (quoting *Russell v. Department of Natural Resources*, 183 Ill. 2d 434, 447 (1998)). The "[d]efendant bears the burden of establishing the invalidity of the classification." *Id.* We review *de novo* the matter. *Id.*

¶ 12 Section 103-2.1(b-5) provides that statements made in a custodial interrogation concerning any of various offenses listed "shall be presumed to be inadmissible as evidence against the accused *** unless *** an electronic recording is made of the custodial interrogation." 725 ILCS

5/103-2.1(b) (West 2014). Previously, the statute applied only to various homicide offenses (see 725 ILCS 5/103-2.1(b) (West 2012)) until amended, effective January 1, 2014, to include additional offenses. Application to these additional offenses was rolled out over a period of time. The amended statute became effective as to predatory criminal sexual assault of a child (720 ILCS 5/11-1.40 (West 2014)) and aggravated arson (*id.* § 20-1.1) on June 1, 2014. 725 ILCS 5/103-2.1(b-5)(1) (West 2014). It became effective as to aggravated kidnapping (720 ILCS 5/10-2 (West 2014)), aggravated vehicular hijacking (*id.* § 18-4), and home invasion (*id.* § 19-6), on June 1, 2015. 725 ILCS 103-2.1(b-5)(2) (West 2014). It became effective as to aggravated criminal sexual assault (720 ILCS 5/11-1.30 (West 2014)), armed robbery (*id.* § 18-2), and aggravated battery with a firearm (*id.* § 12-3.05(e)) on June 1, 2016. 725 ILCS 103-2.1(b-5)(3) (West 2014).

¶ 13    Defendant argues that the legislative history of the amendment reveals no rational basis for delaying the effective date of the statute to persons charged with differing crimes. Defendant acknowledges the following statement in the legislative history by the senate sponsor concerning the offenses that were selected to be included:

> "These were the felonies suggested by the State's Attorney's Office. They're highly violent felonies that—it was based on the concern about volume. It was—it was determined that these are the ones they could handle the—the—expansion on." 98th Ill. Gen. Assem., Senate Proceedings, May 31, 2013, at 234 (statements of Senator Raoul).

However, defendant notes that the legislative history contains data from the Illinois State Police (ISP) that, to implement the statute, the ISP would need to purchase and maintain multiple permanent cameras and mobile cameras at the cost of $55,000 in the first year and $15,000 for maintenance in subsequent years. 98th Ill. Gen. Assem. House Proceedings, May 31, 2013, at 187-88 (statements of Representative Sacia). Defendant argues that the equipment required for the

entire expansion of offenses was already budgeted for the first year of expansion. Thus, there was no rational basis for delaying implementation as to the remaining offenses. He also notes that, in his case, a detective admitted that the interrogation room had recording equipment.

¶ 14    We initially note that, because defendant is making a facial challenge, he has eliminated from consideration the specific facts of his case; consequently, it is irrelevant that there was recording equipment in the room where he was interrogated. See *Thompson*, 2015 IL 118151, ¶ 36.

¶ 15    Moreover, defendant fails to address additional legislative history showing that the ability of law enforcement agencies to immediately comply with the statute was a concern. While the ISP set forth plans to purchase all of the needed equipment in the first year, the ISP was not the only law enforcement agency affected by the amendment. During house debate, representative Drury stated that the gradual implementation over a period of years was done to address concerns raised by law enforcement. 98th Ill. Gen. Assem. House Proceedings, May 31, 2013, at 186 (statements of Representative Drury). Representative Sacia expressed concern that adding offenses to the statute was not practical and was an "encumbrancy on law enforcement." *Id.* at 190 (statements of Representative Sacia). He provided the data about the cost of equipment for the ISP as part of a larger argument against adding the additional offenses at all. He then spoke about the City of Chicago, which had only 8 out of 135 interview rooms with working recording equipment. *Id.* at 188-89. Chicago's technology room at that time had cost $5 million to put together but had become virtually obsolete, and the company that provided it had gone out of business. *Id.* at 189-90. Another representative expressed concern about small towns being able to implement the amendment when they had barely enough money to keep police on the street in a part-time capacity. *Id.* at 197 (statements of Representative Reboletti). In response to such concerns, Representative Zalewski stated:

"This is a very narrowly drafted Bill. It is… it is well considered, given the con… the constrictions placed upon local governments, what we're asking them to do with respect to these types of interrogations. The roll-out is well thought out, given what we're asking the police departments to do in the next year or so." *Id.* at 203 (statements of Representative Zalewski).

¶ 16     Here, the legislative history reflects a legitimate concern about the ability of law enforcement agencies to comply with the amendment if the additional offenses were all added at once. The legislators named above believed that, with the implementation rolled out over a period of years, agencies would be better able to afford and provide the necessary equipment. The goal was to ease the burden on law enforcement agencies, and the rollout was rationally related to that goal. Accordingly, section 103-2.1(b-5) is not facially unconstitutional and the trial court did not err in denying the motion to suppress.

¶ 17                              III. CONCLUSION

¶ 18     We affirm the judgment of the circuit court of Kane County.

¶ 19     Affirmed.

**No. 2-18-1048**

| | |
|---|---|
| **Cite as:** | *People v. Baker*, 2020 IL App (2d) 181048 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kane County, No. 14-CF-1632; the Hon. David P. Kliment, Judge, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Fletcher P. Hamill, of State Appellate Defender's Office, of Elgin, for appellant. |
| **Attorneys for Appellee:** | Joseph H. McMahon, State's Attorney, of St. Charles (Patrick Delfino, Edward R. Psenicka, and Steven A. Rodgers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |