2022 IL App (1st) 200859

FIRST DISTRICT
THIRD DIVISION
November 10, 2022

No. 1-20-0859

|                                            |   |                        |
|--------------------------------------------|---|------------------------|
|                                            | ) | Appeal from the        |
|                                            | ) | Circuit Court of       |
| THE PEOPLE OF THE STATE OF ILLINOIS,       | ) | Cook County            |
|                                            | ) |                        |
| Plaintiff-Appellee,                        | ) |                        |
|                                            | ) | No. 17 CR 16720(01)    |
| v.                                         | ) |                        |
|                                            | ) |                        |
| ANTHONY WINTERS,                           | ) |                        |
|                                            | ) | Honorable              |
| Defendant-Appellant.                       | ) | James Michael Obbish,  |
|                                            | ) | Judge Presiding.       |
|                                            | ) |                        |

JUSTICE REYES delivered the judgment of the court, with opinion.
Justices Rochford and Martin concurred in the judgment and opinion.

**OPINION**

¶ 1 Defendant Anthony Winters was indicted on two counts of criminal sexual assault based on allegations that he twice inserted his finger into N.P.'s vagina during a clinical massage. Following a bench trial, defendant was convicted of one count of criminal sexual assault and sentenced to four years' imprisonment. On appeal, defendant argues that the State failed to prove beyond a reasonable doubt that he committed criminal sexual assault. Defendant also contends that the version of section 5-4.5-100 of the Unified Code of Corrections (Code of Corrections) under which he was sentenced (730 ILCS 5/5-4.5-100 (West 2020)) violated the due process and equal protection clauses of the United States Constitution (U.S. Const., amend. XIV) and Illinois Constitution (Ill. Const. 1970, art. I, § 2). For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3     The State alleged that defendant, a licensed massage therapist, twice inserted his finger into N.P.'s vagina during a clinical massage and knew that she was unable to give knowing consent. Defendant was indicted on two counts of criminal sexual assault (720 ILCS 5/11-1.20(a)(2) (West 2016)) and was released on bond. As a condition of the bond, defendant was placed on electronic home monitoring.

¶ 4     During the bench trial, N.P. testified that she, her four sisters, and her cousin had planned a "girls' weekend" and had booked hotel rooms in Chicago. On February 10, 2017, prior to meeting her relatives, she scheduled a massage at defendant's business, Therapy for Everybody. After checking in, N.P. completed a form indicating that she was experiencing spasms, cramps, and hip and back pain and that she sought treatment for the middle and lower parts of her back.

¶ 5     According to N.P., defendant introduced himself and led her to a massage room. He instructed her to "undress to [her] comfort." Defendant left the room, and N.P. undressed, leaving on her bra and underwear. N.P. testified that she was uncomfortable since defendant is male but "went forward" with the massage. After she lay on the massage table and covered herself with a sheet, defendant returned to the room and started massaging her. N.P. testified that she was lying on her back, and while defendant was massaging her left leg, she felt his finger inside her vagina. She testified that "the first time that it happened, I was trying to convince myself that it didn't happen."

¶ 6     N.P. testified that, as the massage continued, defendant inserted his finger inside of her vagina a second time. N.P. "reacted" and "jumped in place." According to N.P., after she reacted, defendant asked her whether she "was okay with it," and she told him that she was not. N.P. testified that defendant said, "I'm sorry, I don't usually do this, but I was really attracted to

you." The massage ended approximately five minutes later. N.P. dressed and left the room.

¶ 7    N.P. testified that she was eager to leave and "process what just happened." When she was outside, she called her sister, N.E., who asked her how the massage went. N.P. started crying and said, "he took it too far." N.P. met her sisters and cousin at the hotel but did not go out with them. She testified that she instead stayed at the hotel, cried, and took a bath. The next morning, she again stayed at the hotel while her sisters went out for breakfast. After her sisters returned, N.P. told two of her sisters, including N.E., that the massage therapist twice inserted his finger into her vagina during her massage.

¶ 8    N.P. testified that N.E. provided her the phone number for the nonprofit organization Rape Victim Advocates, which N.P. called the following week; N.P. spoke with an advocate. During the call, N.P. described what happened to her; the advocate informed her that she had been sexually assaulted. N.P. then went to a police station, where she was advised to have a rape kit administered. At West Suburban Medical Center, N.P. met with Meredith Watkins, a registered nurse, and informed Watkins that she wanted a rape kit administered. N.P. testified that she cried throughout the examination. After the examination, a police officer visited her at the hospital, and she reported the incident.

¶ 9    N.P. testified that in October 2017, she met with a police detective, who had printed a photograph of the employees at Therapy for Everybody. N.P. identified defendant as the massage therapist who sexually assaulted her.

¶ 10    Meredith Watkins, an expert in sexual assault nurse examination and emergency nursing, testified that she administered an evidence collection kit and conducted a sexual assault nursing examination on N.P. Watkins testified that N.P. described that she was sexually assaulted, and Watkins recorded her description. In addition, Watkins testified that during the examination, she

observed a two-millimeter tear on N.P.'s posterior fourchette (the bottom of the inner folds of the vulva). Watkins testified that the sexual assault that N.P. described could have caused the tear.

¶ 11    On cross-examination, Watkins testified that the tear was acute, or unhealed, but that she did not know when the tear occurred. Watkins further testified that N.P. indicated she had recently used a genital wipe or wash, which could have caused the tear.

¶ 12    The parties stipulated that the evidence collection kit failed to detect male-specific DNA.

¶ 13    After the State rested, defendant moved for a directed finding; the motion was denied. Defendant also moved for a mistrial, which was denied.

¶ 14    Defendant testified that he co-owned Therapy for Everybody, where he worked as a clinical massage therapist and operations manager. On February 10, 2017, defendant testified that N.P. completed a form indicating that she wanted her middle and lower back treated. When he and N.P. were in the massage room, he asked whether she had any questions and instructed her to undress to her comfort level. Defendant left the room while she undressed. When he returned, N.P. was lying on the table and under covers, and he began the session by massaging her legs. According to defendant, N.P. did not express discomfort at any time during the massage. Defendant denied inserting his finger into N.P.'s vagina.

¶ 15    Desirae Melecio testified that she regularly worked with defendant at Therapy for Everybody for approximately a year and had developed a sense of his character and morals. She testified that defendant was hardworking, punctual, professional, friendly, and intelligent and his morals were sound.

¶ 16    Following closing arguments, the trial court found defendant guilty of one count of criminal sexual assault. Defendant moved to vacate the finding of guilt or, alternatively, to grant defendant a new trial. The trial court denied the motion.

¶ 17 At sentencing, after the trial court heard arguments in aggravation and mitigation, defense counsel requested a credit of 968 days for the time defendant was under electronic monitoring during the pretrial proceedings. In response, the State noted that, under sections 5-4.5-100(d) of the Code of Corrections (730 ILCS 5/5-4.5-100(d) (West 2020)) and 5-5-3(c)(2)(H) of the Code of Corrections (*id.* § 5-5-3(c)(2)(H)), defendants may not receive credit for time spent in home detention prior to judgment if they were convicted of a nonprobationable offense, such as criminal sexual assault. The trial court observed that "this is the first time any state's attorney has argued to me that a defendant is not entitled to credit while on electronic monitoring, other than in some driving related offenses." The trial court subsequently stated that "it may very well be that there have been very few people in front of this court, if any, charged with this type of an offense that actually were out on electronic monitoring." The trial court concluded that defendant was not entitled to credit for the time he spent under electronic monitoring. Defendant was sentenced to the minimum term of four years' imprisonment.

¶ 18 In denying defendant's motion to reconsider sentence, the trial court stated that "the sentence might have been somewhat different had the defendant been given credit for all that time [on electronic monitoring], but I do think it's something to take into consideration. So that's why I sentenced him to the minimum sentence that was imposed here." This appeal followed.

¶ 19                                      ANALYSIS

¶ 20 On appeal, defendant argues that his criminal sexual assault conviction should be reversed since the State failed to prove all of the statutory elements beyond a reasonable doubt. Defendant also contends that the version of section 5-4.5-100 of the Code of Corrections under which he was sentenced (*id.* § 5-4.5-100) violated the due process and equal protection clauses of the United States Constitution (U.S. Const., amend. XIV) and Illinois Constitution (Ill. Const.

1970, art. I, § 2).

¶ 21                                  Sufficiency of the Evidence

¶ 22     Defendant argues that the State failed to prove beyond a reasonable doubt that he committed criminal sexual assault. Section 11-1.20(a) of the Criminal Code of 2012 (720 ILCS 5/11-1.20(a) (West 2016)) states that a person commits criminal sexual assault if that person commits an act of sexual penetration and (1) uses force or threat of force; (2) knows that the victim is unable to understand the nature of the act or is unable to give knowing consent; (3) is a member of the victim's family and the victim is under 18 years old; or (4) is 17 years of age or over and holds a position of trust, authority, or supervision *vis-à-vis* the victim and the victim is at least 13 years old but is under age 18.

¶ 23     The subsection under which defendant was charged and convicted is section 11-1.20(a)(2), *i.e.*, that defendant knew that N.P. was unable to understand the nature of the act or was unable to give knowing consent. On appeal, defendant contends that the evidence of N.P. jumping in place when defendant allegedly inserted his finger into her vagina and stating that she "wasn't okay with it" demonstrates that she was able to understand the nature of defendant's act and give knowing consent. Defendant further asserts that since N.P. was not disabled, intoxicated, unconscious, or asleep when defendant allegedly inserted his finger into her vagina, she was able to understand the nature of defendant's act and give knowing consent.

¶ 24     Reviewing courts resolve a sufficiency of the evidence challenge by determining whether, after considering the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). It is the responsibility of the fact finder, not the reviewing court, to determine the credibility of the witnesses, resolve any conflicts presented by the

evidence, and draw reasonable inferences from the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Circumstantial evidence is sufficient to sustain a conviction, provided that the elements of the crime charged are proved beyond a reasonable doubt. *People v. Hall*, 194 Ill. 2d 305, 330 (2000). A trial court's judgment can only be set aside when the proof is so unsatisfactory, improbable, or implausible that it justifies a reasonable doubt as to defendant's guilt. *People v. Slim*, 127 Ill. 2d 302, 307 (1989).

¶ 25    As defendant observes, courts have applied section 11-1.20(a)(2) in cases where the victims were "severely mentally disabled, highly intoxicated, unconscious, or asleep." *People v. Lloyd*, 2013 IL 113510, ¶¶ 39-40; *e.g.*, *People v. Taylor*, 345 Ill. App. 3d 1064, 1073-74 (2004) (observing that the defendant knew the victim was asleep and thus unable to give knowing consent); *People v. Fisher*, 281 Ill. App. 3d 395, 402 (1996) (noting that the criminal sexual assault statute "prohibits a person from taking sexual advantage of another when the other is unable to knowingly consent to the act," such as when the victim is intoxicated); *People v. Whitten*, 269 Ill. App. 3d 1037, 1040-41 (1995) (finding that an individual with developmental disabilities was unable to knowingly consent to sexual intercourse with the defendant). In *Lloyd*, 2013 IL 113510, ¶ 40, our supreme court concluded that in order to sustain defendant's convictions for criminal sexual assault of a 13-year-old, the State was required to demonstrate that the defendant knew that the victim was unable to understand the nature of the act or to give knowing consent for a reason other than his knowledge of her status as a minor.

¶ 26    We observe, however, that the foregoing cases do not provide that evidence of severe impairment, *e.g.*, intoxication or unconsciousness, is *required* for a finding of guilt under the criminal sexual assault statute. As the State accurately observes, this Court has repeatedly affirmed criminal sexual assault convictions under circumstances similar to the instant case.

¶ 27   For example, in *People v. Quinlan*, 231 Ill. App. 3d 21, 22 (1992), the victim was admitted to the hospital for pneumonia and dehydration. The defendant—a respiratory therapist—informed the victim that he needed to perform a medically necessary procedure, but the defendant had fabricated it, and he proceeded to perform sexual acts on the victim. *Id.* at 23-24. Following his conviction for criminal sexual assault, defendant argued on appeal that the victim was an intelligent, educated woman who understood the proposed acts and knowingly consented to them. *Id.* at 25. The appellate court rejected this contention, reasoning that the victim had consented to a medical procedure, not to sexual acts. *Id.* The appellate court concluded that, since the defendant's acts were not a medical procedure, the evidence proved beyond a reasonable doubt that the victim did not understand the nature of the defendant's acts and did not give knowing consent. *Id.*

¶ 28   Similarly, in *People v. Deenadayalu*, 331 Ill. App. 3d 442, 444-45 (2002), the defendant—the victim's treating physician—performed sexual acts on the victim after she informed him that she had a headache. The defendant was convicted of criminal sexual abuse. *Id.* at 444. On appeal, the defendant argued that the State failed to prove that the victim was unable to consent to the sexual conduct. *Id.* at 450. The defendant asserted that the victim was put on notice that "something was amiss" as he performed the sexual acts. *Id.* at 450-51. The appellate court rejected this argument, stating that "we do not believe that the victim in this case was put on notice of the defendant's intentions until he committed the charged act of sexual conduct." *Id.* at 452. The appellate court thus concluded that the evidence supported the trial court's finding that the victim was unable to consent to the defendant's conduct. *Id.*

¶ 29   In the instant case, N.P. testified that after checking in at the professional massage therapy clinic, she completed a form indicating that she was experiencing spasms, cramps, and

hip and back pain and that she wanted the middle and lower parts of her back treated. N.P. testified that during the massage, after the defendant inserted his finger into N.P.'s vagina, she "was trying to convince [herself] that it didn't happen." N.P. testified that after defendant inserted his finger into her vagina the second time, she "reacted," "jumped in place," and said that she "wasn't okay with it."

¶ 30    Similar to the patients in *Quinlan* and *Deenadayalu*, N.P. had consented to a specific course of treatment, *i.e.*, a clinical massage; she did not consent to sexual acts. See also *People v. Burpo*, 164 Ill. 2d 261, 264-65 (1995) ("When a gynecologist intentionally exceeds the scope of reasonable medical standards, the patient's consent is vitiated, and the physician may be prosecuted under the sexual assault statute."). A trier of fact could infer that defendant knew that N.P. could not knowingly consent to the sudden change in the nature of his contact from therapeutic to sexual. Her immediate physical reaction and verbal response upon her realization that defendant's conduct was volitional—and not accidental—is further evidence that she had not expected and therefore could not consent to his contact.

¶ 31    As noted above, where a criminal conviction is challenged based on insufficient evidence, a reviewing court must determine whether any rational trier of fact could have found beyond a reasonable doubt the elements of the crime, considering all of the evidence in the light most favorable to the prosecution. *People v. Brown*, 2013 IL 114196, ¶ 48. For the reasons discussed herein, defendant has not demonstrated that the evidence, when viewed in a light most favorable to the State, was so unreasonable, unsatisfactory, or improbable to raise a reasonable doubt as to his guilt under the criminal sexual assault statute.

¶ 32                    Defendant's Electronic Home Monitoring

¶ 33    Defendant also argues that the version of section 5-4.5-100 of the Code of Corrections

under which he was sentenced (730 ILCS 5/5-4.5-100 (West 2020)) violated the due process and equal protection clauses of the United States Constitution (U.S. Const., amend. XIV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 2). That version of section 5-4.5-100 stated that offenders shall be given credit on their sentences for the days spent in custody and for time spent in home detention. 730 ILCS 5/5-4.5-100(b) (West 2020). That section, however, also stated that offenders who were convicted of nonprobationable offenses, such as criminal sexual assault, shall not receive credit for time spent in home detention prior to judgment. *Id.* §§ 5-4.5-100(d),5-5-3(c)(2)(H). Defendant contends that the statute's distinction between those who shall and shall not receive credit for time spent in home detention, or those convicted of probationable and nonprobationable offenses, is irrational. Defendant contends that the time spent in home detention prior to trial should be credited towards any defendant's sentence regardless of his or her crime. Thus, defendant argues that since the distinction is unconstitutional, he is entitled to credit for the time he spent in home detention prior to trial.

¶ 34    The State initially contends that we may resolve defendant's argument on nonconstitutional grounds. The State notes that courts have consistently found that defendants are not "in custody" when they are in home confinement as a condition of their bond, and therefore, they are not entitled to credit for time spent in home confinement. The State thus argues that since defendant was in home confinement as a condition of bond, he was never "in custody" and not entitled to credit under section 5-4.5-100(b).

¶ 35    Section 5-4.5-100(b) states that offenders shall be given credit on their sentences for the days spent in custody. *Id.* § 5-4.5-100(b). Defendants confined to their homes as a condition of bond, however, are not "in custody." *People v. Smith*, 2014 IL App (3d) 130548, ¶ 43("[T]he whole point of the appeal bond, like every other bond, [is] to avoid custody. *** [T]ime spent in

custody does not include that period of time during which a defendant is released on bond, regardless of the restrictions imposed as a condition of release." (citing *People v. Ramos*, 138 Ill. 2d 152, 160 (1990))). Thus, the State is correct to assert that, since defendant was released on bond and his electronic home monitoring was a condition of that bond, he was not "in custody" under section 5-4.5-100(b).

¶ 36    Offenders in "home detention," however, may also be entitled to credit on their sentences. 730 ILCS 5/5-4.5-100(b) (West 2020). When defendant was sentenced, section 5-8A-2 of the Code of Corrections defined "home detention" as "the confinement of a person convicted or charged with an offense to his or her place of residence under the terms and conditions established by the supervising authority." *Id.* § 5-8A-2(C). Further, "supervising authority" included the sheriff. *Id.* § 5-8A-2(E). Here, the record indicates that defendant was on electronic home monitoring during pretrial proceedings, and in an order dated December 10, 2019, defendant was allowed to change his host site while on electronic monitoring pending the Cook County Sheriff's approval. Nevertheless, based on the record presented, we are unable to definitively determine that defendant was in "home detention" for purposes of sentencing credit.

¶ 37    We note that while defendant was in "home detention," he would be entitled to credit towards his sentence if it were not for the particular version of section 5-4.5-100(d) under which defendant was sentenced. That section prohibited offenders convicted of nonprobationable offenses, such as criminal sexual assault, from receiving credit for time spent in home detention. Assuming *arguendo* that defendant was on home detention, we thus address defendant's arguments that section 5-4.5-100(d) is unconstitutional.

¶ 38                           Defendant's Constitutional Challenges

¶ 39    Defendant argues that the version of section 5-4.5-100(d) under which he was sentenced

violated the due process and equal protection clauses of the United States Constitution (U.S. Const., amend. XIV) and Illinois Constitution (Ill. Const. 1970, art. I, § 2).

¶ 40    In addressing a challenge to the constitutionality of a statute, we presume that the statute is constitutional. *People v. Greco*, 204 Ill. 2d 400, 406 (2003). If possible, a court must construe the statute to uphold its constitutionality and validity. *Id.* The party challenging the statute's constitutionality has the burden of demonstrating its invalidity. *Id.* Whether a statute is constitutional is reviewed *de novo. Id.* at 407.

¶ 41                                  *Due Process*

¶ 42    The fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) both provide that no person shall be deprived of life, liberty, or property without due process of law. Substantive due process bars arbitrary governmental action infringing upon a protected interest. *People v. Cardona*, 2013 IL 114076, ¶ 17. When a party challenges a statute on due process grounds, we must first determine whether the statute regulates a liberty interest that is a fundamental right. *People v. Pepitone*, 2018 IL 122034, ¶ 14. Here, defendant acknowledges that section 5-4.5-100(d) does not regulate a fundamental right. Since that section does not regulate a fundamental right, we apply the rational basis test to determine its constitutionality. *People v. Rizzo*, 2016 IL 118599, ¶ 45.

¶ 43    Under the rational basis test, we ask whether "there is a legitimate state interest behind the legislation" and, if so, "whether there is a reasonable relationship between that interest and the means the legislature has chosen to pursue it." *People v. Johnson*, 225 Ill. 2d 573, 584 (2007). The rational basis test is highly deferential to the legislature, and if there is any conceivable set of facts to justify the statute, it must be upheld. *Rizzo*, 2016 IL 118599, ¶ 45.

¶ 44    In applying the rational basis test to section 5-4.5-100(d), we observe that courts have long acknowledged the legislature's broad power to define crimes and fix punishments. *E.g.*, *People v. Taylor*, 102 Ill. 2d 201, 208 (1984). The legislature may enact more serious penalties to deter more serious crimes. *People v. Johns*, 153 Ill. 2d 436, 449 (1992). Courts, moreover, have acknowledged the legislature's legitimate interest in punishing and deterring sexual offenses while protecting potential victims. *E.g.*, *People v. Leach*, 385 Ill. App. 3d 215, 222 (2008). We find that section 5-4.5-100(d) is reasonably related to this legitimate interest; withholding credit for time spent in pretrial detention from defendants convicted of nonprobationable offenses is a reasonable means to deter more serious crime. See *Johns*, 153 Ill. 2d at 449. Further, specifically withholding credit from defendants convicted of criminal sexual assault is a reasonable means to punish and deter sexual offenses and to protect potential victims. See 730 ILCS 5/5-4.5-100(d), 5-5-3(c)(2)(H) (West 2020); *Johns*, 153 Ill. 2d at 449; *Leach*, 385 Ill. App. 3d at 222. Thus, we find that section 5-4.5-100(d) satisfies rational basis review under the due process clauses of the United States and Illinois Constitutions. See *Rizzo*, 2016 IL 118599, ¶ 45.

¶ 45                                   *Equal Protection*

¶ 46    The fourteenth amendment to the United States Constitution (U.S. Const., amend. XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, § 2) both provide that no person shall be denied equal protection of the laws. Courts apply the same analysis to equal protection claims brought under both the United States and Illinois Constitutions. *People v. Fisher*, 184 Ill. 2d 441, 450 (1998). The constitutional right to equal protection guarantees that similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat them differently. *People v. Whitfield*, 228 Ill. 2d 502, 512 (2007). When the legislative classification does not affect a fundamental right or

discriminate against a suspect class, we apply the rational basis test. *People v. Masterson*, 2011 IL 110072, ¶ 24.

¶ 47     In the instant case, defendant acknowledges that section 5-4.5-100(d)'s classification of those who may not receive credit for pretrial home detention, or those convicted of nonprobationable offenses, does not affect a fundamental right; thus, the rational basis test applies. See *id.* Under the rational basis test, we consider whether the challenged classification bears a rational relationship to a legitimate governmental purpose. *Id.* We must uphold a classification if any set of facts can reasonably be conceived to justify it. *People v. Baker*, 2020 IL App (2d) 181048, ¶ 11.

¶ 48     As stated above, the legislature has a legitimate interest in deterring more serious crimes as well as deterring sexual offenses and protecting potential victims. *Johns*, 153 Ill. 2d at 449; *Leach*, 385 Ill. App. 3d at 222. In addition, the legislature's classification of those who may not receive credit for pretrial home detention, or those convicted of nonprobationable offenses such as criminal sexual assault, is rationally related to the legislature's legitimate purpose of deterring more serious crimes as well as deterring sexual offenses and protecting potential victims. See 730 ILCS 5/5-4.5-100(d), 5-5-3(c)(2)(H) (West 2020); *Johns*, 153 Ill. 2d at 449; *Leach*, 385 Ill. App. 3d at 222. Thus, we find that section 5-4.5-100(d) also satisfies rational basis review under the equal protection clauses of the United States and Illinois Constitutions. See *Baker*, 2020 IL App (2d) 181048, ¶ 11.

¶ 49     Defendant notes that in 2021, the Illinois General Assembly amended section 5-4.5-100 to remove the language in subsection (d). Pub. Act 101-652, § 10-281 (eff. July 1, 2021) (amending 730 ILCS 5/5-4.5-100). Defendant contends that, by doing so, the legislature recognized that section 5-4.5-100(d) was unconstitutional. Defendant, however, points to no

source of authority supporting the proposition that a legislative amendment, without more, demonstrates that the prior version was unconstitutional. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 50     Defendant further notes the trial court's remark at sentencing that "this is the first time any state's attorney has argued to me that a defendant is not entitled to credit while on electronic monitoring, other than in some driving related offenses." Defendant asserts that the trial court may have made this remark because section 5-4.5-100(d) was unconstitutional. The trial court, however, neither found nor suggested that section 5-4.5-100(d) was unconstitutional, and defendant again fails to cite any authority in support of his contention. See *id.*

¶ 51     We thus reject defendant's arguments and conclude that the version of section 5-4.5-100(d) under which defendant was sentenced did not violate the due process and equal protection clauses of the United States Constitution and Illinois Constitution.

¶ 52                                   CONCLUSION

¶ 53     For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 54     Affirmed.

_____

## *People v. Winters*, 2022 IL App (1st) 200859

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-1672; the Hon. James Michael Obbish, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, Joseph Michael Benak, and Michael C. Bennett, of State Appellate Defender's Office, of Chicago, for appellant. |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Brian K. Hodes, and Daniel Piwowarczyk, Assistant State's Attorneys, of counsel, and Henry L. Adams, law student), for the People. |

_____